# BALTIMORE CITY COURT.

Filed June 2, 1921.

JOHN HOPKINS, ETC.,

VS. ·

CHARLES A. KOEHLER.

*Kaufman & Kaufman* for plaintiff.
*Harry B. Wolf* for defendant.

DAWKINS, J.—

As has been frequently stated, the court should be exceedingly slow to place itself in the category of being the thirteenth juror and of disturbing a verdict of a jury on the facts of a case. Certainly such a course should not be followed unless the verdict is shocking in its result or manifestly unfair to the parties involved. Any other course pursued would cause all verdicts to be set aside unless the court happened to agree with the jury in its finding.

At the hearing of the motion in this case no special consideration was given to the propriety of reducing the verdict, although excessive damages is given as one ground for a new trial, but more particular emphasis was given as to the propriety of allowing any judgment at all to stand against the defendant. It is useless to say what the court sitting as a jury would have done.

The narr. filed in this case alleges an assaulting and beating, for which the sum of $20,000 is claimed. The defendant pleaded the general issue, denial and self-defense.

Testimony was submitted by both sides in support of their respective contentions. Prayers were submitted and granted presenting to the jury all the various angles from which the case could be viewed, and the jury found a verdict for the plaintiff for $1,000.

Some comment ·was made that the jury list was handed to counsel outside of the courtroom. This was done for the convenience of all concerned, but every opportunity was given for the lists to be examined, reviewed and considered. The only fair comment on the jury would seem to be that they told the verdict before the sealed verdict was delivered in the courtroom; but, as this information went to friends of both parties to the case, it should not be considered at this time.

If verdicts are to be set aside for extravagant statements made by counsel in opening statements to the jury, as suggested, there would be few ver-

dicts that would stand, as many things are said that are not proven, due no doubt to a misstatement by clients or witnesses or other infirmities in proof that develop as the case proceeds.

Testimony offered by the plaintiff tends substantially to prove that he went to the defendant's garage about 1 o'clock in the morning. The purpose of his going was not disclosed, and, while there, he was struck on the head with a pistol by the defendant and thrown out and seriously hurt, requiring a doctor's attention. The amount of the doctor's fee and in what business the plaintiff was engaged or to what extent, if any, he was prevented from attending to his avocation is not shown.

The defendant offered testimony tending to show that he is engaged in a substantial business enterprise; that he was in his place of business; that the plaintiff, with no purpose or business intention, in a drunken condition, came as a trespasser; that the plaintiff used improper language; that he rather defied him to put him out of the place, that he had heard that the plaintiff had threatened to "get him," though he could "bust him if he wanted to do it." That he threw him out and slammed him against the wall; that he had no pistol; that he only used such force as was necessary to get him out of the place. With these facts before the jury it was justified in finding a verdict for either party.

The plaintiff was in a machine with several men during the evening, but only one witness appears to corroborate his statements in regard to the occurrence in part (save the doctor).

The plaintiff has been convicted of several misdemeanors, some involving charges of disorderly conduct. The defendant offered no satisfactory explanation of why four other men with occupations that do not indicate very hard work were in his place of business that time of night. Although these men were there, they apparently took no active part in the fight. Although it was not proven, there was a strong intimation that an atmosphere pervaded the situation that would indicate that something was more active than the displacement of one who, unbidden, had soberly entered and had to be ejected from a quiet establishment, where nothing was kept but automobiles. If any such atmosphere existed there, the wrongdoing would be more tolerantly considered. Although no special exception was offered to the plaintiff's first prayer, it is now suggested that the jury should not have been instructed that it was in their province to consider whether or not the injuries were of a permanent nature. The Court of Appeals has said that the advantage of such misinstructions can be availed of only in this very definite way of a special exception to the granting of such a prayer. The only evidence tending to establish the permanency of the injuries perhaps is that the scars on the head will likely remain. The character of the injuries or the real effect on the plaintiff is not very satisfactorily established. All of the statements of all of the witnesses are not entitled to be accepted as correct. This case has been more fully considered and discussed than would usually seem necessary in passing upon a motion of such a character, but the reason for this is found in the rather unusual circumstances and for the reason of the conclusions that have been reached. The verdict seems excessive, which is always an unsatisfactory conclusion to reach, after a case has been so fully and ably tried.

The motion will be granted unless the plaintiff consents to a remittitur of the verdict from $1,000 to $500. This not to be binding on him unless the defendant consents to accept that as conclusive of the case.

If the plaintiff consents to the remittitur and the defendant fails to agree to the remittitur, then the motion for a new trial will be granted.